1
2
3
4
5
6
7
8     UNITED STATES DISTRICT COURT
9     CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION
10

| | |
|---|---|
| ANTONIO FERNANDO MELARA, | Case No. EDCV 17-2275 JGB (SPx) |
| Petitioner, | |
| v. | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| ALEJANDRO MAYORKAS, Secretary of the Department of Homeland Security, et al., | |
| Respondents. | |

This case was tried to the Court without a jury on July 16, 2021. Before trial, both Petitioner and Respondent United States filed proposed findings of fact and conclusions of law pursuant to Local Rule 52-1. ("Pr's PFOF," Dkt. No. 71; "US PFOF," Dkt. No. 72.)

At trial, the Court ordered supplemental briefing on the Petitioner's burden of proof. Petitioner submitted his brief on the subject on July 27, 2021. ("Pr's Supp. Br.," Dkt. No. 79.) Respondent United States submitted its brief on July 30, 2021. ("U.S. Supp. Br.," Dkt. No. 80.) The United States also submitted a closing brief on August 9, 2021, supported by proposed findings of fact and conclusions of law. ("US Br.," Dkt. No. 81; "Final US PFOF," Dkt. No. 81-1.) Petitioner Melara did not file a closing brief.

The Court, having considered all the evidence presented by the parties, the written submissions from both sides, the pretrial conference stipulated findings of fact, and the argument of counsel, issues the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52.

## I.    FINDINGS OF FACT

1. Petitioner Antonio Fernando Melara is a citizen of El Salvador. ("PTCO Stip.," Dkt. No. 73 ¶ 1.) He was born in 1959 and grew up in a suburb of San Salvador, El Salvador, with his mother and maternal grandparents. (Id. ¶¶ 4, 6, 9.) Petitioner has never been confused about the date of his birth, and he assumes that he is a native and citizen of El Salvador based, at least in part, on the copies of a birth certificate he obtained from El Salvador in 1997 or 1998 and 2018 and because his mother was born there. (Id. ¶¶ 3, 5.) Petitioner's El Salvadoran birth certificate states that both of his parents were born in El Salvador. (Id. ¶ 7.)

2.  Petitioner's parents were never married.  (<u>Id.</u> ¶ 2.)  His mother was born and grew up in El Salvador; she was not a U.S. citizen.  (<u>Id.</u> ¶ 8.)  Plaintiff has never met his father.  (<u>Id.</u> ¶ 10.)

3.  Petitioner has met his paternal grandmother, Francesca Cerna.  (<u>Id.</u> ¶ 61.)  When Petitioner was young, Francesca Cerna told him that he had been born in Puerto Rico.  (<u>Id.</u>)

4.  Petitioner had a passport issued by El Salvador by the time he was 16 or 17.  (<u>Id.</u> ¶ 17.)  In order to receive this passport, Petitioner presented his El Salvador birth certificate.  (<u>Id.</u> ¶ 19.) This El Salvador passport was legitimate, and Petitioner believed it to be legitimate.  (<u>Id.</u> ¶ 18.)

5.  Prior to 1979, Petitioner had gone back and forth between El Salvador and the United States a number of times.  (<u>Id.</u> ¶ 23.)  On these trips, he entered the United States by saying he was a U.S. citizen.  (<u>Id.</u> ¶ 24.)

6.  On or around July 23, 1979, Petitioner entered the United States without inspection near San Luis, Arizona.  (<u>Id.</u> ¶ 26.)  He was then 20 years old.  (<u>Id.</u> ¶ 4.)  On July 24, 1979, Petitioner was apprehended by United States Border Patrol agents near Yuma, Arizona.  (<u>Id.</u> ¶ 28.)  Plaintiff told officers he was a native of El Salvador; deportation proceedings were initiated.  (<u>Id.</u> ¶ 30.)  While Plaintiff was in deportation proceedings, he did not tell anyone he thought he was a U.S. Citizen.  (<u>Id.</u> ¶ 31.)  Petitioner did not tell anyone he was unsure of where he was born at any time on or between July 24, 1979 and August 10, 1979.  (<u>Id.</u> ¶ 32.)  Petitioner was deported from the United States to El Salvador on August 10, 1979.  (<u>Id.</u> ¶ 29.)  This was the only time Petitioner was ever deported from the United States.  (<u>Id.</u>)

7.  After Petitioner was deported from the United States—sometime between 1979 and 1986—Ms. Cerna gave Petitioner a Puerto Rican birth certificate which stated he was born in Puerto Rico.  (<u>Id.</u> ¶ 62; Petitioner's Trial Testimony.)  This Puerto Rican birth certificate was fraudulent.  (Kinsell

3

Testimony.)  Ms. Cerna told Petitioner she was giving him the Puerto Rican birth certificate because she did not want him to be deported again.  (PTCO Stip. ¶ 63.)

8. Petitioner used the Puerto Rican birth certificate to obtain a U.S. Passport, which was issued on April 18, 1986.  (Id. ¶¶ 34-35.)  Petitioner's U.S. Passport stated his place of birth is Puerto Rico, U.S.A.  (Id.)  Petitioner's U.S. Passport also stated his mother was born in Puerto Rico, which is untrue.  (Id. ¶ 36.)  Petitioner used this passport to travel and entered the United States multiple times using it.  (Id. ¶ 38.)

9. From the mid-1980's to 1992, Petitioner was a superintendent at Marketing Data Systems in Orange, California, where he managed 100 employees on average and ran the plant.  (Id. ¶ 13.)  Between 1992 and 1999, Petitioner worked as a manager for a few different companies.  (Id. ¶ 14.)  While working, Petitioner was also in school.  (Id. ¶ 12.)  Petitioner attended Compton Community College for three years, from 1991-1994.  (Id. ¶ 11.)  He took classes in computer science and management and received good grades.  (Id. ¶ 12.)

10. Petitioner registered to vote in U.S. elections in 1983 and 1994 and on April 13, 1999.  (Id. ¶ 53.)  When Petitioner registered to vote in U.S. elections in 1983, 1994 and 1999, he listed his place of birth as Ponce, Puerto Rico.  (Id. ¶ 54.)  Petitioner voted in U.S. elections because he believed he was a U.S. citizen.  (Id. ¶ 57.)

11. On March 9, 1989, Petitioner signed and submitted to the U.S. Post Office a document entitled "Statement Regarding Lost or Stolen Passport." (Exhibit 18-7.)  On the "Statement Regarding Lost or Stolen Passport" that Petitioner signed and submitted to the U.S. Post Office on March 9, 1989, Petitioner stated he was born in Ponce, Puerto Rico on May 20, 1959.  (Id.)  On the "Statement Regarding Lost or Stolen Passport," Petitioner stated

4

1    that someone broke into his car and stole his luggage, which contained his

2    U.S. Passport and other things. (Id.)

3    12. On March 9, 1989, Petitioner also signed under oath and submitted to the

4    U.S. Post Office an Application for a <u>new</u> U.S. Passport based on his report

5    of the theft of his U.S. Passport issued in 1986. (Exhibit 18-6.) On the

6    Application for a new U.S. Passport, Petitioner stated he was born in Ponce,

7    Puerto Rico on May 20, 1959. (Id.) On this Application, Petitioner also

8    stated his mother and father were born in Puerto Rico, but did not include

9    their dates of birth. (Id.) Petitioner presented his Puerto Rican birth

10    certificate with his Application for a new U.S. Passport on March 9, 1989.

11    (Id.)

12    13. A new U.S. Passport was not issued in response to Petitioner's Application

13    for a new U.S. Passport that he signed and submitted to the U.S. Post Office

14    on March 9, 1989. (Exhibit 18-6.) After Petitioner unsuccessfully applied

15    for a new U.S. Passport in 1989, his original U.S. Passport was recovered,

16    and he used it to travel in and out of the United States on multiple occasions.

17    (Petitioner's trial testimony.) Petitioner's U.S. Passport expired April 17,

18    1996. (PTCO ¶ 37.)

19    14. On January 13 of either 1997 or 1998,[1] Petitioner signed a G-325 Biographic

20    Information Form that states he and his parents were born in El Salvador.

21    (PTCO ¶ 44.)[2] On this date, Petitioner had a social security number, but he

22    signed the form stating that he did not have a social security number. (Id. ¶¶

23    45-46.)

24

25

26

27    [1] The form is dated January 13, 1997, but it is possible this form was mis-dated.

28    [2] A G-325 Biographic Information Form is a USCIS form that collects biographical
information of an applicant applying for certain immigration benefits.

15. Petitioner's wife filed an I-130 Petition for Alien Relative ("I-130") on February 2, 1998.  (Id. ¶ 40.)[3]  The I-130 states that Petitioner was born in San Salvador, El Salvador.  (Id. ¶ 42.)  If Petitioner were a U.S. citizen, his wife would not need to file an I-130.  (Id. ¶ 41.)

16. Petitioner voted in the U.S. General Election on November 7, 2000.  (Id. ¶ 55.)  When he registered to vote in 1983, 1994, and 1999, he claimed to be a U.S. citizen under penalty of perjury.  (Id. ¶ 55.)  Petitioner testified under oath in this litigation that he voted in the U.S. because he believed he was a U.S. citizen.  (Id. ¶ 57.)  He also testified under oath in this litigation that when he voted in 2000, he did not know whether he had been born in Puerto Rico or El Salvador.  (Id. ¶ 58.)  Petitioner's belief that he was a U.S. citizen at the time he voted in 2000 was based on his belief that he was born in Puerto Rico.  (Id. ¶ 59.)

17. On July 20, 2001, Petitioner filed a Form I-485 application to adjust his status to lawful permanent resident.  (Id. ¶ 47.)  Petitioner's Form I-485 application was submitted under 8 U.S.C. § 1255a (the "LIFE Legalization" provisions).  (Id. ¶ 51.)  Petitioner did not file any waivers of grounds of inadmissibility in connection with his Form I-485 application and therefore did not obtain any waivers of the grounds of his inadmissibility.  (Parada Testimony.)

18. On August 31, 2004, Petitioner signed another G-325 Biographic Information Form stating he and his mother were born in El Salvador, and his father was born in Puerto Rico.  (Pr's PFOF Exh. 10.)

---

[3] An I-130 is a form used by U.S. citizens or lawful permanent residents to establish their relationship to an eligible relative who wishes to come to or remain in the United States permanently and get a Permanent Resident Card (also called a Green Card).  Generally, once an I-130 is approved, the eligible relative may apply for an immigrant visa or to become a lawful permanent resident.  See https://www.uscis.gov/i-130.

6

19. Petitioner became a lawful permanent resident on January 3, 2005, through late amnesty under immigrant classification W46.  (Id. ¶ 48.)

20. Petitioner obtained his lawful permanent resident status based, at least in part, on his representation and proof that he was born in El Salvador.  (Id. ¶ 49.)

21. Petitioner's mother died in Los Angeles in 2005 or 2006.  (PTCO ¶ 67.)  He is not aware of anyone alive today who could corroborate where he was born.  (Id. ¶ 68.)  Petitioner has never been to Puerto Rico and has no family who lives in Puerto Rico.  (Id. ¶¶ 69-71.)

22. Petitioner submitted a Form N-400 Application for Naturalization on November 28, 2014 ("N-400").  (Id. ¶ 80.)  Petitioner signed his N-400 on April 6, 2015.  (Id. ¶ 81.)  Petitioner's N-400 application states that his mother was not a U.S. citizen, but his father is or was.  (Id. ¶¶ 83-84.)

23. Question 1 on the N-400 asks, "Have you ever claimed to be a U.S. citizen (in writing or any other way)?  Petitioner responded "Yes."  (Exh. 4.)

24. Question 2 on the N-400 asks, "Have you ever registered to vote in any Federal, State, or local election in the United States?"  Petitioner responded "Yes."  (Id.)

25. Question 3 on the N-400 asks, "Have you ever voted in any Federal, State, or local election in the United States?"  Petitioner responded "Yes."  (Id.)

26. Question 31 on the N-400 asks, "Have you ever given any U.S. governmental official any information or documentation that was false, fraudulent or misleading?" Petitioner responded "No."  (Id.)

27. Question 32 on the N-400 asks, "Have you ever lied to any U.S. government official to gain entry or admission to the United States or to gain immigration benefits while in the United States?"  Petitioner responded "No."  (Id.)

28. Question 33 on the N-400 asks, "Have you ever been removed, excluded, or deported from the United States?"  Petitioner responded "Yes." (Id.)

29. During an interview Petitioner attended with U.S. Citizenship and Immigration Services ("USCIS") regarding his N-400 on April 6, 2015 ("First Interview"), Petitioner affirmed his responses, including that he had never given any U.S. Government official any information or documentation that was false, fraudulent or misleading, as well as that he had never lied to any U.S. government official to gain entry or admission to the United States or to gain immigration benefits while in the United States.  (PTCO ¶ 89.)

30. During a second interview with a USCIS officer on September 14, 2015, Petitioner stated to a USCIS officer that he was born on May 20, 1959 in El Salvador.  (Id. ¶ 90.)  During interviews in his naturalization proceedings, Petitioner contended that he had a good faith belief he was a U.S. citizen when he voted in U.S. elections.  (Id. ¶ 91.)

31. On November 28, 2016, USCIS issued a decision determining that Petitioner was not eligible for naturalization because he had not been lawfully admitted for permanent residence.  (Id. ¶ 92.)  On December 21, 2016, Petitioner filed a Form N-336 Request for a Hearing on a Decision in Naturalization.  (Id. ¶ 93.)  On August 31, 2017, USCIS issued a decision affirming the denial of Petitioner's N-400 on the grounds that his lawful permanent residence status was unlawfully procured and that his false representation to be a U.S. citizen shows he lacks good moral character.  (Id. ¶ 94.)

## II.    CONCLUSIONS OF LAW

1. A petitioner bears the burden of proof on all elements of naturalization in a de novo review.  U.S. v. Hovsepian, 359 F.3d 1144, 1168 (9th Cir. 2004).

The petitioner must establish each element of naturalization by a preponderance of the evidence.  Id. (citing 8 C.F.R. § 316.2(b).)

2.  No person has a right to naturalization "unless all statutory requirements are complied with."  United States v. Ginsberg, 243 U.S. 472, 474-75 (1917); Fedorenko v. United States, 449 U.S. 490, 506 (1981) ("There must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship.")

3.  To be eligible for naturalization, an applicant must establish, among other things, that he has been "lawfully admitted to the United States for permanent residence."  8 U.S.C. §§ 1427(a), 1429.

4.  The applicant bears the burden of proving that his admission was lawful.  8 U.S.C. § 1429.  It is not enough for an applicant for U.S. citizenship to simply show he or she has been granted lawful permanent resident ("LPR") status; an applicant must also prove he or she was granted LPR status in substantive compliance with the immigration laws.  Injeti v. USCIS, 737 F.3d 311, 316 (4th Cir. 2013).

5.  If an applicant is found not to have complied with the substantive legal requirements, he is deemed unlawfully admitted for permanent residence.  Kyong Ho Shin v. Holder, 607 F.3d 1213, 1217 (9th Cir. 2010) (holding that someone who obtains permanent resident status does so unlawfully if later proceedings reveal that he was in fact ineligible to obtain that status in the first place).

6.  To be lawfully admitted for permanent residence under INA 245A (8 U.S.C. § 1255a), an applicant bears the burden of proving, among other requirements, that he is admissible as an immigrant with certain exceptions (not applicable here) as provided under the Act.  INA § 245A(a)(4) (8 U.S.C. § 1255a(a)(4)).

9

1     7.  An applicant is inadmissible to the United States if he has (a) fraudulently or

2          willfully misrepresented a material fact (8 U.S.C. § 1182(a)(6)(C)(i)); (b)

3          falsely claimed U.S. citizenship for any purpose or benefit under the INA or

4          any other Federal or State law (8 U.S.C. § 1182(a)(6)(C)(ii)); or (c)

5          unlawfully voted (8 U.S.C. § 1182(a)(10)(D)).

6     8.  In contrast to fraud, "willful" misrepresentation under the INA does not

7          require intent to deceive; rather, an alien's misrepresentation is "willful" if

8          the statement was deliberate and voluntary, and the alien had knowledge of

9          the statement's falsity.  <u>Espinoza-Espinoza v. Immigration & Naturalization</u>

10        <u>Serv.</u>, 554 F.2d 921, 925 (9th Cir. 1977); <u>United States v. Arango</u>, 670 F.3d

11        988, 995 (9th Cir. 2012); <u>Forbes v. I.N.S.</u>, 48 F.3d 439, 442 (9th Cir. 1995).

12    9.  Only a misrepresentation of material fact makes an alien inadmissible.

13         Generally, a misrepresentation is material if it is "predictably capable of

14         affecting, i.e., ha[s] a natural tendency to affect, the official decision . . .

15         whether the applicant meets the requirements for citizenship."  <u>Kungys v.</u>

16         <u>United States</u>, 485 U.S. 759, 771-772 (1988).  Put another way, the

17         materiality of a misrepresentation depends on "whether the

18         misrepresentation or concealment had a natural tendency to produce the

19         conclusion that the applicant was qualified."  <u>Id.</u> at 771-72.

20   10.  <u>Matter of Zhang</u>, 27 I&N Dec. 569 (BIA 2019) is not entitled to deference by

21         this Court because it is a dramatic break with past agency interpretation, is in

22         conflict with the Department of State's current interpretation of the false

23         claim to citizenship ground of inadmissibility, and is a break from Congress's

24         clearly expressed intent.  An agency's interpretation of an unambiguous

25         statute receives no deference if the interpretation is not in line with

26         Congress's clearly expressed intent. <u>See, e.g.</u>, <u>Valenzuela Gallardo v. Lynch</u>,

27         818 F.3d 808, 815 (9th Cir. 2016).

28

11.  <u>Matter of Zhang</u> takes a dramatic and unique approach to the knowledge element out of the term "false claim to U.S. citizenship." <u>See, e.g.</u>, <u>Richmond v. Holder</u>, 714 F.3d 725, 729 (2d Cir. 2013) (assuming without deciding that false claim inadmissibility provision has knowledge element); <u>Muratoski v. Holder</u>, 622 F.3d 824, 828 (7th Cir. 2010) (agency determined that applicant lacked good moral character because he "knew or should have known" that he was not a United States citizen at the time he made that claim); <u>Valdez-Munoz v. Holder</u>, 623 F.3d 1304, 1308 (9th Cir. 2010) (reasonable factfinder would not be compelled to disagree with agency's determination that applicant was inadmissible because he "intended to and did make a false claim of United States citizenship").

12. Petitioner was not inadmissible at the time of adjustment of status under 8 U.S.C. §1182(a)(6)(C)(i) for having made a material misrepresentation at the time of applying for his U.S. passport by presenting a Puerto Rican birth certificate because, at the time of the application, Petitioner believed his Puerto Rican birth certificate to be genuine. Petitioner did not make a misrepresentation deliberately or with notice of its falsity. <u>See</u> <u>Espinoza-Espinoza</u>, 554 F.2d at 925.

13. Petitioner was not inadmissible at the time at the time of his adjustment for false claims to U.S. citizenship under 8 U.S.C. §1182(a)(6)(C)(ii) due to registering to vote in 1999 and voting in 2000. Prior to Petitioner registering to vote in 1999, he had been issued a U.S. Passport. It was reasonable for Petitioner to rely on his passport as evidence he was a U.S. citizen when he registered to vote. <u>See</u> <u>Magnuson v. Baker</u>, 911 F.2d 330, 333 (9th Cir. 1990) (citing 22 U.S.C. §2705). The 1996 rejection of Petitioner's passport renewal application was not a denial of citizenship. <u>See</u> <u>Kelso v. U.S. Dep't of State</u>, 13 F. Supp. 2d 1, 4 (D.D.C. 1998) ("to admit that passports are

evidence of citizenship is to say nothing about whether their revocation implicates the fundamental right of citizenship.")

14. Petitioner was not inadmissible at the time of his adjustment of statusfor unlawful voting under 8 U.S.C. §1182(a)(10)(D) due to his voting in the 2000 general election.  Petitioner was permitted to rely on the previously-issued passport as evidence of U.S. citizenship.

15.  Alternatively, Petitioner was not inadmissible under 8 U.S.C. §1182(a)(10)(D) because he did not vote in violation of any identified federal, state, or local constitutional provision, statute, ordinance, or regulation.  Petitioner did not violate 18 U.S.C. § 611(a) because he believed himself to be a U.S. citizen at the time he voted.  Cf. Matter of Fitzpatrick, 26 I&N Dec. 559 (BIA 2015).  Additionally, Petitioner did not violate California Election Code § 18560(a) because that statute requires him to have known that he was not entitled to vote at the time he voted.  See, e.g., People v. Alarcon, 2016 WL 237124, *4 (CA. Ct. App. 2d Dist. Jan. 20, 2016) (unpub).  As Petitioner believed himself to be a citizen at the time he voted, he did not know that he was not entitled to vote, and therefore, did not violate the California Election Code.

16. Petitioner has also established that he is a person of good moral character and that he did not provide false testimony during his naturalization interview.  False testimony must be given with the subjective intent to obtain immigration benefits.  See Matter of Gomez-Beltran, 26 I&N Dec. 765, 767 (BIA 2016).  "Willful misrepresentations made for other reasons, such as embarrassment, fear, or a desire for privacy, were not deemed sufficiently culpable to brand the applicant as someone who lacks good moral character."  Kungys v. United States, 485 U.S. 759, 780 (1988).  Petitioner indicated during his interview that he had not previously given any misleading or false information to government officials because at the time

12

he claimed to be a U.S. citizen to officials, he believed himself to be a citizen. Petitioner's answers to the questions at his naturalization interview reflected only a misunderstanding, and do not reflect any "subjective intent" to mislead the naturalization officer.  Cf. Gomez-Beltran, 26 I&N Dec. at 770.

17. In addition, Petitioner's disclosure of his claims to U.S. citizenship on the N-400 and during his interview constitute a timely retraction of any seemingly false responses to Questions 31 and 32 of his naturalization application, and do not qualify as false testimony which would preclude a finding of good moral character.  See id. at 769.

18. Petitioner has established all of the required elements for naturalization, including that he was lawfully admitted to permanent residence for at least five years; that he has been physically present in the United States for at least half of the days in the last five years; that he has resided within California for at least three months prior to the date of his application for naturalization; that he has continuously resided within the United States since the time of his application; and that he has been a person of good moral character for at least five years.  See 8 U.S.C. §1427(a).

## III.   DISCUSSION

Petitioner Antonio Fernando Melara grew up with contradictory stories: His grandmother told him he had been born in Puerto Rico, and his mother, through her silence, implied he had been born in El Salvador.  Before he moved to the United States, it did not really matter which story was true.  Petitioner also understood his mother and her family did not like to talk about his father, whom he has never met.

13

Upon receiving a copy of a Puerto Rican birth certificate from his paternal grandmother, Petitioner developed a sincere, good faith belief that he was a United States citizen.  Based on this belief, Petitioner enjoyed the privileges of United States citizenship—travel with a U.S. Passport and voting with the same.

After his U.S. Passport expired and he could not get a new one, Petitioner began to realize the story his grandmother had told him was almost certainly not true.  At this point, he likely also came to realize that his birth certificate from El Salvador was also incorrect, as it reports that his father was born in El Salvador, not Puerto Rico.

After Petitioner realized he had likely not been born in Puerto Rico, he applied for lawful permanent residence and complied with all requirements of that process.  On Petitioner's N-400, he revealed that he had previously claimed U.S. citizenship, voted in U.S. elections, and been deported from the United States, but he denied ever using false documents or lying to U.S. officials. All statements are true; Petitioner did not possess the requisite level of knowledge to rise to the level of material misrepresentation or to render him a person of poor moral character.

## IV.  CONCLUSION

The Court finds that Petitioner Antonio Fernando Melara has met his burden of proving each element of naturalization by preponderance of the evidence.   Judgment is GRANTED for Petitioner.

Dated: October 28, 2021

THE HONORABLE JESUS G. BERNAL
United States District Judge

14